# IN THE COURT OF APPEALS OF IOWA

No. 18-1777
Filed March 18, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA KELLY URANGA,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

Joshua Uranga appeals his conviction for failure to comply with sex offender registration requirements. **AFFIRMED.**

Andrew J. Boettger (until withdrawal) of Hastings, Gartin & Boettger, LLP, Ames, and Agnes Warutere of the Warutere Law Firm, Ankeny, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**VAITHESWARAN, Presiding Judge.**

Joshua Uranga was placed on the sex offender registry in 2014. Based on his "tier III" sex offender classification, he was required to "appear in person in the county of principal residence . . . to verify residence, employment, and attendance as a student, to allow the sheriff to photograph [him], and to verify the accuracy of other relevant information," and he was required to do so "every three months." Iowa Code § 692A.108(1)(c) (2014).

The State charged Uranga with failure to comply with the sex offender registry requirements, first offense, "committed as follows":

> [T]he said Joshua Kelly Uranga, on or about November, 2016, in the County of Boone and State of Iowa did fail to comply with sexual offender registry requirements by failing to appear in person in the county of principal residence to verify relevant information; all in violation of section(s) 692A.103, 692A.108, 692A.111 of the Iowa Code.

The jury found him guilty as charged.[1]

After the verdict but before sentencing, Uranga filed a "motion in arrest of judgment & motion for new trial/set aside jury verdict based on new evidence." He asserted newly discovered evidence in the form of a December 2, 2016 letter from the sheriff afforded him five business days from receipt of the letter to appear, and "[t]he allowance and waiver by the Sheriff's Office through this newly discovered letter" meant that he "would have been able to argue to the jury that he registered within the time outlined by the allowance/waiver." Following a hearing, the district court denied the motion. Uranga appealed.

---

[1] The State also charged him with another crime. The jury acquitted him of the crime.

Iowa Rule of Criminal Procedure 2.24(2)(b)(8) authorizes a new trial "[w]hen the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." To prevail on a motion for new trial based on a claim of newly discovered evidence, a defendant must show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Moon v. State*, 911 N.W.2d 137, 151 (Iowa 2018) (citation omitted).

The district court determined the evidence was discovered after the verdict and could not have been discovered earlier in the exercise of due diligence. But the court concluded "the letter [was] not material" and the letter probably would not have changed the result. "[W]e review the trial court's ruling on a motion for new trial on the basis of newly-discovered evidence for an abuse of discretion." *State v. Romeo*, 542 N.W.2d 543, 551 (Iowa 1996). Uranga takes issue with the court's application of the third and fourth factors

The district court based its determination that the letter was not material on a recent Iowa Supreme Court opinion, *State v. Coleman*, 907 N.W.2d 124 (Iowa 2018). The court stated,

> The defendant was not justified in relying on the letter as a defense at trial since the upshot of the letter from a defense perspective is to argue for the existence of a grace period which the Iowa Supreme Court ruled upon before trial [in *Coleman*] and found no grace period existed.

In *Coleman*, the court interpreted a different provision of the sex offender registry statute—Iowa Code section 692A.105. That provision requires sex offenders to notify the sheriff of temporary lodging "within five business days of a change." The court stated "within five business days" meant within five business days of "the notification-triggering event," which was the date the sex offender changed locations, not five days after the sex offender moved, as the defendant argued. *Coleman*, 907 N.W.2d at 136–37. The court characterized the defendant's argument as advocating for an impermissible "grace period" beyond five days of the notice-triggering event. *Id.* The court stated "[n]o other required change in the sex offender's 'relevant information' under chapter 692A provides the offender with a grace period before triggering the notification requirement." *Id.* at 137.

*Coleman* is inapposite. First, it says nothing about Iowa Code section 692A.108(1)(c), the provision at issue here. Second, Uranga is not advocating for a "grace period" beyond five business days from the notice-triggering event. He essentially argues for a "grace period" from the notice-triggering event, which he asserts is the December 2 letter. Accordingly, the question of whether the letter was material does not turn on the holding of *Coleman*.

The materiality of the letter turns on its contents. The December 2 letter stated:

> Dear Mr. Uranga,
> In accordance to Iowa Code Section 692A.104, you MUST appear in person to register with the sheriff of each county where the offender has a residence, maintains employment or is in attendance as a student.

> You were on the list to appear in our office to verify your registration information for the month of November.
> **At this time, you are non-compliant status. If you do not appear in our office within 5 business days of receipt of this letter, you will be charged with the offense of Failing to Comply with the SOR.**
> Administrative Office hours are Monday-Friday, 8:00 a.m–4:30 p.m. Other than when the holidays are being observed.
> If you receive this letter on a weekend or holiday, the next business day the administration office is open is when you should appear to bring your paperwork up to date.

Although Uranga did not have the December 2 letter at trial, he testified to receiving this type of letter in the past. He stated he had "seen this notice before" "more than once," and he was never charged when he came in within five business days. Boone County deputy sheriffs also testified to the five-business-day period. They voiced some equivocation on when the period began and what it meant.

Uranga's attorney moved for judgment of acquittal on the basis of the testimony about the five-day period. He stated the "standard letter" served by the sheriff on "non-compliant registrant[s]" gave "them five business days to show up" and "the letter" did "not apparently say that this is a discretionary five day business period." The prosecutor similarly referenced the letter, noting the five-day period "probably shouldn't be in the letter" and stating in any event, the court did "not have the notice."

During the jury instruction conference, Uranga's attorney argued "there has to be an instruction on promise of leniency. That if a promise of leniency is made by a law enforcement official, a person is entitled to . . . rely on that and not . . . expect to get arrested again." He continued by noting "if we're going to use November [as the month in which to report to the sheriff,] then . . . promise of leniency is a recognized legal concept and the jury needs to be instructed on that."

The court denied the request for a promise of leniency instruction, reasoning the "five day issue" was "a point of fact" and the court's job was "to instruct on the law." However, the court granted counsel's request "to argue that the deputies testified they give a five day grace period [and] Mr. Uranga has been through this before."

Uranga's attorney did just that. In his closing argument, he asserted:

We had two deputies here who testified that when you don't report on time, they go out. They try to find you. They give you a letter and say come in within five business days. This ain't his first rodeo. He's been there before . . . . And he came in on the 7th. You can do the math . . . . [W]hen a cop tells you something you tend to believe them.

Based on this record, we conclude the December 2 letter was central to Uranga's defense, notwithstanding the district court's denial of his requested instruction. In other words, the letter was material.

The third newly-discovered evidence factor also requires a showing the evidence was not merely cumulative or impeaching. The State argues "Uranga presented that exact argument to the jury, using testimony about the typical contents of . . . form letters," rendering the letter cumulative. We agree the five-day period figured prominently at trial. But no witness testified to the precise contents of the December 2 letter and, specifically, the bolded admonition, "**If you do not appear in our office within 5 business days of receipt of this letter, you will be charged with the offense of Failing to Comply with the SOR.**" The letter, in no uncertain terms, corroborated Uranga's belief that he would be charged only if he failed to appear within five days of notification. The bolded "picture" was arguably worth a thousand words. We conclude the letter was not cumulative or merely impeaching.

We turn to the fourth factor—whether the letter probably would have changed the result of trial. "The standard for whether the evidence probably would have changed the result of the trial is a high one because of the interest in bringing finality to criminal litigation." *More v. State*, 880 N.W.2d 487, 499 (Iowa 2016).

In applying this factor, the court again relied on *Coleman*. As discussed, *Coleman* is not controlling. But the jury instructions are. The jury was instructed the State would have to prove the following elements of the crime:

> 1. Joshua Uranga had a known legal duty as a Registered Sex Offender to appear, in person, at the Sheriff's Office of Boone County for the month of November, 2016.
> 2. Joshua Uranga voluntarily and intentionally failed to appear in person at the Boone County Sheriff's Office in the month of November 2016.

The jury was further instructed, "as a matter of law" that "Uranga was a Registered Sex Offender for the year 2016" and "[h]e was required to appear, in person, at least once every three months to the Sheriff's Office of his county of principal residence" and "verify the accuracy of all 'relevant information' to include his current residence." And the jury was instructed "it is not necessary that a person knows the act is against the law." He simply had to act, or in this case, not act, voluntarily rather than by "mistake or accident." As noted, the jury was not instructed on a promise of leniency or any defense grounded in a five-day grace period.

Although Uranga made a valiant case for leniency nonetheless, he was forced to admit the key facts underlying the charge. He was asked if he knew "the system and what" he was "supposed to do." He responded, "I do know that, sir, yes." He was asked if he "knew [he] had to verify [his] information in November

2016?" He responded, "I knew that, sir, yes." He was asked, "You didn't do it?" He answered, "I did so not in the month of November, I mean, but in the first week of December verified for that month." Because his admissions established the elements of the crime, the letter documenting the grace period probably would not have changed the result.

We affirm Uranga's judgment and sentence for failure to comply with the sex offender registry.[2]

**AFFIRMED.**

May, J., concurs; Doyle, J. concurs specially.

---

[2] Uranga argues the district court erred in failing to apply statutory provisions permitting a modification of the date for "exigent circumstances" or a waiver of the "next immediate in-person verification" on timely appearance. *See* Iowa Code § 692A.108(5), (6). Neither statutory provision was raised in the district court. Accordingly, error was not preserved. But, even if the provisions had been raised and addressed, the record contains scant if any evidence of an exigency that prevented Uranga from reporting in November 2016, and the predicates for application of the waiver provision did not apply.

**DOYLE, Judge** (concurring specially)

Pee-ew! This case stinks. I must hold my nose while specially concurring.

To be sure, the majority's opinion is well-thought out and well-written—and correct in its conclusion. But what stinks here is the misleading December 2, 2016 letter from the Boone County Sheriff's Office to Uranga.

Uranga was placed on the Sex Offender Registry in 2014. As a Tier III sex offender, Uranga was required to appear at the sheriff's office four times every year to verify his residence, employment, etc., with the registry. *See* Iowa Code § 692A.108(1). Uranga's designated verification months were February, May, August, and November. While section 692A.104 provides for a five-day "grace period" from certain triggering events, section 692A.108 does not. So for November 2016, he had a duty to appear by November 30th or face criminal charges for failure to do so. But Uranga was misled by the sheriff's letter.

It was the sheriff's policy or standard procedure to deliver a notice—a courtesy letter—to people who were late in appearing at the sheriff's office for verification with the registry. When asked, "What is the purpose of that notice?" a deputy sheriff testified, "It basically spells out that they missed their verification and they need to get into the office to get it verified, otherwise we could pursue criminal charges."

Although the letter itself was not in evidence at trial, its contents were. Despite the fact that there is no "grace period" in Iowa Code section 692A.108, and that Uranga was already in violation of the statute on December 1, 2016, the December 2, 2016 letter advised Uranga: "**At this time, you are non-compliant status. If you do not appear in our office within 5 business days of receipt**

**of this letter, you will be charged with the offense of Failing to Comply with the SOR**."[3] (bold in original). The letter is signed by the county's highest law enforcement officer, the sheriff. As the majority points out, "The letter, in no uncertain terms, corroborated Uranga's belief that he would be charged only if he failed to appear within five days of notification."

History bears out Uranga's expectations of no prosecution. He testified he had been tardy in verifying in the past. He was served a notice, or "flyer" as he phrased it, "more than once." The flyer informed him he had five days to come in to verify information. On those occasions when he was late, he showed up at the sheriff's office within five days of the notice and was never charged with a violation of the registry. He knew he was required to come into the sheriff's office in the month of November 2016, "[o]r within the grace period," to verify his information. He testified he got the flyer on this occasion. So when he showed up at the sheriff's office on December 7th, within the sheriff's five-day grace period, he naturally expected the same result—no charges. But unlike all previous occasions, this time the State lowered the boom and charged Uranga with violating section 692A.108.

The jury was instructed the State would have to prove the following elements of the crime:

> 1. Joshua Uranga had a known legal duty as a Registered Sex Offender to appear, in person, at the Sheriff's Office of Boone County for the month of November, 2016.

---

[3] The courtesy letter "was something that was drafted with the previous county attorney" and was used by the sheriff's office for some time. After being advised by the State that there is no grace period, the sheriff's office has now discontinued use of the letter.

> 2. Joshua Uranga voluntarily and intentionally failed to appear in person at the Boone County Sheriff's Office in the month of November 2016.

Uranga's trial counsel argued to the jury that Uranga should be found not guilty because he reported to the sheriff's office within the five-day grace period outlined in the sheriff's letter. Following the instructions given, the jury didn't buy the argument and found Uranga guilty.

I agree with the majority that Uranga's admissions at trial established the elements of the crime, and that providing the jury with the sheriff's courtesy letter probably would not have changed the result. Nevertheless, it seems patently unfair that Uranga's compliance with a directive from the county's highest law enforcement officer played no part in the prosecution and disposition of this case. Despite complying with its terms, the sheriff's courtesy letter was no "Get Out of Jail Free" card for Uranga this time. It smells.